UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY NICHOLS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-1318-B |
| | § | |
| AUSTIN BRIDGE & ROAD LP, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Austin Bridge & Road LP ("ABR")'s Motion to Dismiss, or

in the Alternative, to Stay Proceedings and Compel Arbitration (Doc. 8). For the following reasons,

the Court **GRANTS** the Motion and **DISMISSES** this case **WITH PREJUDICE**.

I.

BACKGROUND

This is a whistleblower retaliation case. Plaintiff Anthony Nichols claims his former

employer, ABR, retaliated against him after he reported safety violations to ABR managers. Doc. 1,

Compl., ¶¶ 6, 8–10. Nichols asserts a retaliation claim under the Surface Transportation Assistance

Act ("STAA"). *Id.* ¶ 3.

Nichols worked as both a Dispatch Coordinator and a Commercial Motor Vehicle Driver

for ABR. *Id.* ¶ 7; Doc. 10, App'x, Alvarson Decl., ¶ 7. While working in these roles, Nichols

dispatched ABR "drivers to lay asphalt on . . . interstate highways" and "to repair, extend, and renew"

interstate highways. Doc. 14-1, Nichols Decl., ¶ 2. Dispatching involved communicating with drivers

and providing information or assistance to help them complete their tasks. *Id.* ABR's drivers also

-1-

delivered "hot mix asphalt" from ABR's asphalt plants, which were all located in Texas, to ABR's customers, who were also all located in Texas. Doc. 10, App'x, Alvarson Decl., ¶¶ 9–10. Because these drivers only delivered asphalt to locations in Texas, they also only ever laid the ABR asphalt on roads in Texas. *See id.* Nichols also occasionally drove Commercial Motor Vehicles for ABR, Doc. 1, Compl., ¶ 7, but he never drove a vehicle outside of Texas for his job. *See* Doc. 10, App'x, Alvarson Decl., ¶¶ 9–11.

As part of his employment, Nichols signed ABR's Arbitration Agreement which "applies to all claims or disputes . . . related to or arising out of [his] application for employment, [his] employment, and/or [his] separation from employment." Doc. 10, App'x, Ex. A, 2. This Arbitration Agreement also specified that it "is governed by the Federal Arbitration Act and evidences a transaction involving commerce." *Id.* Nichols filed this lawsuit on June 13, 2023. Doc. 1, Compl. ABR filed this Motion seeking the Court to compel arbitration and dismiss this case or, alternatively, to stay the case while the parties arbitrate the dispute pursuant to the Arbitration Agreement. Doc. 9, Br. Mot., 1. The Court considers the Motion below.

## II.

## LEGAL STANDARDS

A.    *The Federal Arbitration Act*

"When a party who has agreed to arbitrate a dispute instead brings a lawsuit, the Federal Arbitration Act [("FAA")] entitles the defendant to file an application to stay the litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 413 (2022) (citing 9 U.S.C. § 3). The defendant may also petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." *See* 9 U.S.C. § 4.

Determining whether the parties agreed to arbitrate a dispute "involves two analytical steps. The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). "If the court finds that the parties agreed to arbitrate, the court typically 'must consider whether any federal statute or policy renders the claims nonarbitrable.'" *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021).

B.     *Transportation Worker Exemption*

The FAA does not govern "contracts of employment of . . . any . . . class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This is known as the transportation worker exemption. To determine whether this exemption applies, the Court employs a two-step analysis. First, the Court defines the "relevant class of workers to which [the worker] belongs." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (internal citations omitted). A worker is a member of a class of workers based on the actual work they "typically carry out." *Id.* Second, the Court determines whether this class of workers "play[s] a direct and necessary role in the free flow of goods across borders," meaning that they are "actively engaged in transportation of those goods across borders." *Id.* at 458 (citations omitted).

### III.

### ANALYSIS

The Court concludes that Nichols is required to arbitrate his claim against ABR pursuant to the parties' Arbitration Agreement. Nichols does not dispute that his employment contract with ABR includes a mandatory arbitration provision or that his STAA claim is covered by this arbitration

provision. *See generally* Doc. 14, Br. Resp. Instead, Nichols argues that he is exempt from the FAA because he is a transportation worker. *Id.* at 1. The Court finds that Nichols is not a transportation worker because he was not directly involved in transporting goods across state or international borders. Therefore, the Court grants ABR's Motion to Dismiss and dismisses the case with prejudice.

A.     *Nichols is Not Exempt from the FAA.*

The first step in determining whether the transportation worker exemption applies is defining the class of workers to which Nichols belongs. *See Saxon*, 596 U.S. at 456. The "class of workers" Nichols falls under is determined by the work Nichols performed at ABR. *See id.* Neither party has attempted to define the class of workers containing Nichols. However, Nichols primarily dispatched drivers from ABR's plants to the company's different projects within Texas, while also occasionally working as a Commercial Motor Vehicle driver for ABR. Doc. 10, App'x, Alvarson Decl., ¶ 9; Doc. 1, Compl., ¶ 7. After determining the work Nichols performed for ABR, the Court finds that Nichols belongs to a class of workers that delivered asphalt to ABR's customers in Texas and that laid asphalt on, repaired, and extended roadway projects also located within Texas. *See Saxon*, 596 U.S. at 455 (finding the cargo loaders' supervisor was part of a class of workers of airplane cargo loaders because she also loaded and unloaded cargo); *see also Lopez v. Cintas Corp.*, 47 F.4th 428, 432 (5th Cir. 2022) (defining the plaintiff's class of workers based on the work he performed for his employer). This class of workers includes Nichols and the ABR drivers he dispatched—the Court will refer to the class as "Nichols and the ABR drivers."

The second question is whether Nichols and the ABR drivers were "engaged in foreign or interstate commerce." *Saxon*, 596 U.S. at 458. A class of workers is only engaged in foreign or interstate commerce if it is "directly involved in transporting goods across state or international

borders." *Id.* at 451. Nichols and the ABR drivers appear to have been engaged in two different kinds of work: (1) they delivered asphalt from ABR's asphalt plants to ABR's customers and (2) they worked on ABR's roadway projects, some of which included interstate highways. Doc. 10, App'x, Alvarson Decl., ¶¶ 9–10; Doc. 14-1, Nichols Decl., ¶ 2. Nichols and the ABR drivers were not engaged in interstate commerce when performing either duty.

In *Saxon*, the Supreme Court found that a class of workers was engaged in interstate commerce where the class "physically load[ed] and unload[ed] cargo on and off airplanes" and these planes would subsequently "travel[] in interstate commerce" by crossing state and international borders. 596 U.S. at 456, 462. Thus, the class of workers loaded and unloaded cargo that was still passing through interstate commerce. *See id.* at 458–59. The Supreme Court explained that the cargo loaders were engaged in interstate commerce because they "handle[d] goods *traveling* in interstate and foreign commerce." *Id.* at 463 (emphasis added). Therefore, the FAA's transportation worker exemption applied as the worker "belong[ed] to a class of workers engaged in foreign or interstate commerce." *Id.* (citations omitted).

Nichols and the ABR drivers are distinct from the class in *Saxon*. Unlike the cargo in *Saxon*, ABR's asphalt was not passing through interstate commerce when it was delivered by Nichols and the ABR drivers. With regards to their delivery of asphalt, Nichols and the ABR drivers only ever delivered asphalt to locations within Texas—they never crossed state or international borders. Doc. 10, App'x, Alvarson Decl., ¶¶ 9–10. Thus, the asphalt was simply being delivered to a different location within Texas, *id.*, as opposed to being placed on an airplane that was bound for a different state. *Saxon*, 596 U.S. at 458–59.

In *Lopez*, the Fifth Circuit concluded a class of delivery drivers was not engaged in interstate

commerce when delivering items from a local warehouse to local customers. 47 F.4th at 432. The plaintiff there was a driver based in Texas who picked up items from a Houston warehouse and delivered those items to local customers within Texas. *Id.* at 430. Although the plaintiff delivered goods that were frequently manufactured outside of Texas, the Fifth Circuit reasoned that "[o]nce the goods arrived at the Houston warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce." *Id.* at 433.

Nichols and the ABR drivers are more akin to the class in *Lopez* because both classes of workers never left the state when delivering their respective goods. *See Lopez*, 47 F.4th at 433. Further, there is no evidence to suggest that ABR's asphalt *ever* passed in interstate commerce before the drivers delivered it to ABR's customers in Texas. *See* Doc. 10, App'x, Alvarson Decl., ¶¶ 9–10. Thus, Nichols and the ABR drivers are even further removed from interstate commerce than the plaintiff in *Lopez*, who delivered goods that had previously passed in interstate commerce. *See Lopez*, 47 F.4th at 433.

Even assuming the asphalt was later used by some of ABR's customers to build interstate highways, Nichols and the ABR drivers still did not engage in interstate commerce by delivering it. Delivering asphalt solely within Texas that later became part of interstate highways simply connects the class to "instrumentalities of interstate commerce," which is insufficient to be "engaged in interstate commerce." *Cf. Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 198 (1974) (holding that parties who sold asphalt within a state that was later used to build interstate highways were not engaged in interstate commerce).[1]

---

[1] In *Gulf Oil*, the Supreme Court was interpreting "engaged in commerce" as it is used in § 7 of the Clayton Act. 419 U.S. at 198. However, the Supreme Court later relied on *Gulf Oil* when interpreting "engaged in interstate commerce" as the term is used in the FAA. *Saxon*, 596 U.S. at 462.

Additionally, Nichols and the ABR drivers were not engaged in interstate commerce when working on interstate highways. Nichols and the ABR drivers helped build and maintain interstate highways that were then used by others to engage in interstate commerce; however, they were not, themselves, transporting any goods across state or international borders or handling any goods that were in the process of crossing such borders. *See Saxon*, 596 U.S. at 463; *see Lopez*, 47 F.4th at 433. Instead, their work on the highways simply helped facilitate other people's ability to engage in interstate commerce. *See Whitaker v. Enbridge (U.S.) Inc.*, 644 F. Supp. 3d 355, 359–60 (S.D. Tex. 2022) (citing with approval other courts holding that employees who maintained instrumentalities of interstate commerce were not engaged in interstate commerce).

Nichols argues that he played a "necessary role in the free flow of goods across borders" because drivers he dispatched laid asphalt on interstate highways, which he argues "are integral to interstate commerce." Doc. 14, Br. Resp., 8; Doc. 14-1, Nichols Decl., ¶ 2. However, while Nichols and the ABR drivers' work on the highways may have been necessary for interstate commerce, they did not play a *direct* role in interstate commerce, as required to fall within the FAA's transportation worker exemption. *See Saxon*, 596 U.S. at 458; *cf. Whitaker*, 644 F. Supp. 3d at 359 ("Although pipeline inspectors may be important and even necessary to pipeline operation, their role in the free flow of [goods] across borders [is] not direct." (citation omitted)). Therefore, Nichols and the ABR drivers were not engaged in interstate commerce when working on interstate highways. *See Whitaker*, 644 F. Supp. 3d at 359.

In sum, Nichols was not a transportation worker as he was not part of a class of workers directly engaged in interstate commerce. He and the ABR drivers simply delivered goods within Texas and worked on projects involving instrumentalities of interstate commerce without ever

playing a direct role in the transportation of goods across borders. Therefore, Nichols is required to arbitrate his dispute with ABR.

B.      *The Court Dismisses the Case with Prejudice.*

When a court determines that certain claims are subject to arbitration, the FAA provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. While a stay is mandatory when a party requests it, the Fifth Circuit has explained that dismissal may nevertheless be proper in certain circumstances: "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original).

Here, Nichols only brings a single STAA claim against ABR. Doc. 1, Compl., ¶¶ 17–21. Because the Court has determined that this sole claim must be submitted to arbitration, Nichols is ordered to arbitrate his claim in accordance with the terms of the Arbitration Agreement and this case is dismissed with prejudice. *See Alford*, 975 F.2d at 1164 (affirming the district court dismissing the case with prejudice because the plaintiff was required to arbitrate all of his claims).

## IV.

## CONCLUSION

For the reasons discussed above, the Court **ORDERS** the parties to attend arbitration, **GRANTS** ABR's Motion to Dismiss, or in the Alternative, to Stay Proceedings and Compel Arbitration (Doc. 8), and **DISMISSES** this case **WITH PREJUDICE**.

SO ORDERED.

SIGNED: March 11, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE